FAULKNER, Justice.
Merrill Lynch Futures, Inc. filed a complaint against Jack L. Langford and Co.tton States Truck Brokerage Co., Inc., alleging that Langford had breached his commodities brokerage contract by failing and refusing to pay Merrill Lynch for losses incurred by his commodities trading. A claim was also made against both for money due on accounts with Merrill Lynch. Additionally, the complaint included two counts for unlawfully having issued, uttered, and negotiated to Merrill Lynch two worthless checks in the amounts of $45,-000.00 and $32,000.00.
The facts giving rise to this .cause of action are as follows: On October 1, 1982, Langford opened an account with Merrill Lynch. Early in 1983 he opened seven other accounts jointly in his name and in the name of other individuals. Langford was personally obligated and guaranteed payment on these accounts.
On February 23, 1983, Merrill Lynch informed Langford that he had incurred certain losses on his accounts. In order to maintain an agreed upon margin, Langford was obligated to deposit additional sums into his accounts. To meet this margin call, Langford gave Merrill Lynch a check drawn on the account of Cotton States Truck Brokerage and signed by him for $45,000.00. Langford owned 80% of Cotton *1182 States, and his wife and daughter own the remaining 20%.
On February 28, 1988, another check for $32,000.00 was drawn on the Cotton States account and delivered to Merrill Lynch to cover further losses.
Approximately one week later, Langford requested that the drawee bank stop payment on the two checks, because he felt that he had jeopardized Cotton States’ funds by issuing the checks to Merrill Lynch.
When a further fall in the market triggered another margin call, Langford was unable to deposit the required funds. Merrill Lynch immediately stopped his trades and moved to liquidate his existing positions in accordance with the commodities contracts. According to Merrill Lynch, the net loss on the various transactions was $174,503.00, which Merrill Lynch says is owed to it.
After a trial in the Circuit Court of Montgomery County, the jury returned a verdict against Cotton States for $77,000.00 and against Langford in the amount of $30,-654.78, plus interest and attorney’s fees.
Merrill Lynch thereafter moved for a judgment notwithstanding the verdict or for a new trial, claiming inter alia, that the verdicts against the defendants were inconsistent. Defendant Cotton States also moved for a judgment notwithstanding the verdict, alleging that Merrill Lynch failed to prove an intent to defraud as required under the worthless check statute, Alabama Code 1975, § 6-5-285.
The trial court denied Cotton States’ motion for JNOV and granted Merrill Lynch’s motion for new trial as follows:
“The court having considered the arguments of counsel, and the grounds alleged by both parties finds that the jury verdict against Cotton States Truck Brokerage Company, Inc. and the jury verdict against Jack L. Langford are inconsistent, both as between themselves and with the evidence, and that the jury verdict forms, by the writings thereon, also show that the verdicts are inconsistent and cannot be reconciled so as to establish a single uniform intent of the jury.
“Defendant Cotton States Truck Brokerage Company, Inc. complains of jury charges given concerning the two worthless checks negotiated by it. The Court is not persuaded that Cotton States is correct as to its interpretation of the law, and the Court has previously ruled on this point on Motion for Directed Verdict. However, an error in a jury charge as alleged would be grounds for new trial, but not for the entry of judgment notwithstanding the verdict, and the Court has concluded that, based upon the positions of both parties, a new trial is required, to again present the issues to a jury.”
Langford and Cotton States appeal.
Upon review of the record we find that a verdict should have been directed in favor of Cotton States and Langford on the worthless check counts.
The Civil Worthless Check Act, Alabama Code 1975, § 6-5-285, provides:
“The holder of a worthless check, draft or order for the payment of money shall have a right of action against the person who unlawfully made, uttered or delivered the same to him or to his endorser; and such action may be maintained though there has been no prosecution, conviction or acquittal of the defendant for his unlawful act. Such action must be commenced within one year from the date of the unlawful act. The plaintiff in such action may recover such damages, both punitive and compensatory, including a reasonable attorney fee, as the jury or court trying the case may assess.”
Neither this statute nor its criminal counterpart, Alabama Code 1975, § 13A-9-13.1, has previously been interpreted to include within the definition of a “worthless check” one which has been returned marked “stop payment.” We feel, however, that this is not the proper case in which to address this issue. Suffice to say that if such a check does not fall within the purview of the statute then the worthless check claim against defendants must be dismissed; al *1183 ternatively, even if this statute is applicable, a directed verdict should have been granted because of plaintiffs failure to prove the requisite elements of a worthless check claim.
In Smith v. Southeastern Financial Corp, 337 So.2d 330, 333 (Ala.1976), this Court held that in order to make out a claim under the Alabama Worthless Check Act, a plaintiff must prove three elements: (1)that the defendant drew the check, (2) with intent to defraud, (3) knowing that the check would not be honored.
In the instant case Merrill Lynch failed to prove that the checks were drawn with the intent to defraud. The only evidence in the record indicates that Langford stopped payment on the checks one week after they were issued. This evidence is insufficient to prove that at the time the checks were drawn either Langford or Cotton States had the requisite intent to defraud.
Additionally, we find that there was no evidence presented, other than the fact that the checks were drawn on Cotton States’ account, to indicate that the corporate defendant was in any way involved in the dealings between Merrill Lynch and Langford. There also was no evidence presented that Cotton States owed any debt on an account with Merrill Lynch. We therefore conclude that Cotton States should have been completely dismissed from the litigation, as there is no viable claim against it.
Appellants next argue that if defendant Cotton States is dismissed, then the jury verdict is not inconsistent, and therefore the new trial was improperly granted. We disagree and hold that the trial court properly granted a new trial as to the remaining counts against defendant Langford.
The evidence presented in the instant case from Tom Wible, the manager of Merrill Lynch Futures, indicates that the net loss after credits to Langford’s accounts was $174,503.00. Langford, on the other hand, testified that the net loss on his individual account was $35,000.00. He, however, did not testify as to the losses in the seven other joint accounts which he personally guaranteed. It is evident that the $30,654.78 jury verdict is in disregard of, and without support of, the evidence presented at trial. We therefore find that the trial court did not err in granting the motion for new trial as to defendant Lang-ford.
Accordingly, we affirm the granting of a new trial against Langford in accordance with this opinion, and reverse and remand as to defendant Cotton States.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.